This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38113**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RONALD SCOTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Albert J. Mitchell, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Patrick J. Martinez & Associates
Patrick J. Martinez
Albuquerque, NM

for Appellant

## DECISION

**ATTREP, Judge.**

**{1}** Defendant Ronald Scott appeals the district court's denial of his suppression motion, following entry of a conditional plea to certain drug and vehicle offenses. Since the submission of this case for decision, the United States Supreme Court decided *Lange v. California*, ___ U.S. ___, 141 S. Ct. 2011 (2021), in which the Court held that, under the Fourth Amendment to the United States Constitution, the pursuit of a fleeing misdemeanor suspect does not categorically qualify as an exigent circumstance, justifying a warrantless entry into the home. *Id.* at 2016. Because this case involves

facts similar to those in *Lange* and because the parties and the district court did not have the benefit of *Lange* prior to the entry of the order denying Defendant's suppression motion, we remand this matter for the district court to redetermine its ruling in light of *Lange* and for any necessary, further proceedings.

**BACKGROUND**

**{2}** Two New Mexico State Police officers began following Defendant after noticing his vehicle appeared to have no registration tag. While being pursued, Defendant sped and failed to stop at two stop signs. The officers engaged their emergency equipment and, shortly afterwards, Defendant jumped a curb and stopped in front of his house. Defendant got out of his vehicle and began walking toward his house. One of the officers told Defendant to stop and get back into his vehicle. Defendant did not; instead, he continued walking to his front door, telling the officers, "I'm on my property, I don't have to listen to you."

**{3}** The officers pursued Defendant and, while Defendant was on his porch, they placed their hands on him in an attempt to stop him from entering his house. Defendant opened the front door and grabbed the doorframe, but the officers managed to pull him away and back out onto the porch. Although the testimony at the suppression hearing was conflicting as to how far Defendant had entered his house and to what extent the officers passed the doorway's threshold, the district court specifically found the following: "Defendant was able to get his arms inside the threshold as well as his feet. The [officers'] feet never entered the residence. The only part[s] of the [officers'] bodies that entered the residence [were] their hands and arms." After the officers placed Defendant under arrest, they recovered methamphetamine on his person, which led to the drug-related charges in this case.

**{4}** Defendant moved to suppress all evidence seized from him on the grounds that his arrest violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. In essence, Defendant argued that the officers' entry into his home without exigent circumstances to conduct a warrantless misdemeanor arrest was unconstitutional. After holding an evidentiary hearing, the district court denied Defendant's suppression motion in a written order.

**DISCUSSION**

**{5}** In its order denying Defendant's motion to suppress, the district court framed the issue as follows: "[W]hether . . . Defendant's decision, while . . . Defendant was in a public place, to ignore the clear orders of the officers to stop and to instead enter his residence gives . . . Defendant absolute protection from arrest pending the issuance of a warrant." In resolving this issue, the district court understood that the state and federal constitutions generally provide that exigent circumstances, in addition to probable cause, must exist before an officer may make a warrantless arrest in a home. Relying on our Supreme Court's decision in *State v. Paananen*, 2015-NMSC-031, 357 P.3d 958—a case involving a warrantless arrest of a misdemeanant in public, and not an

entry into a residence, *id.* ¶¶ 2-3, 28—the district court denied the motion on the grounds that exigent circumstances existed because the officers did not have time to obtain a warrant prior to arriving at the scene. *See id.* ¶ 26 (holding that, under Article II, Section 10, "there are . . . situations in which an exigency not necessarily amounting to an imminent threat of danger, escape, or lost evidence will be sufficient to render reasonable a warrantless public arrest supported by probable cause under the totality of the circumstances"). In so doing, the district court appears to have applied a categorical rule—i.e., that officers may always pursue a misdemeanant into his home to effectuate an arrest that began in public on the grounds of "exigent circumstances."

{6}     As noted, following submission of this case for decision, the United States Supreme Court issued *Lange*, in which the Court reviewed a California Court of Appeal decision that held—much like the district court did here—that "a misdemeanor suspect . . . could not defeat an arrest which has been set in motion in a public place by retreating into a house or other private place." 141 S. Ct. at 2016 (alteration, internal quotation marks, and citation omitted). The issue in *Lange* was thus "whether the pursuit of a fleeing misdemeanor suspect always—or more legally put, categorically—qualifies as an exigent circumstance" justifying the warrantless entry into a home. *Id.* The Supreme Court held that it did not. *Id.* at 2024.

{7}     In so holding, the Court explained that the Fourth Amendment "generally requires the obtaining of a judicial warrant before a law enforcement officer can enter a home without permission." *Id.* at 2017 (internal quotation marks and citation omitted). Exigent circumstances, the Court explained, was one important exception to the warrant requirement. *Id.* "The exception enables law enforcement officers to handle 'emergencies'—situations presenting a compelling need for official action *and* no time to secure a warrant." *Id.* (emphasis added) (alteration, internal quotation marks, and citation omitted). The Court then explained that a fleeing misdemeanant does not in itself give rise to such an exigency: "The flight of a suspected misdemeanant does not always justify a warrantless entry into a home. An officer must consider all the circumstances in a pursuit case to determine whether there is *a law enforcement emergency.*" *Id.* at 2024 (emphasis added).

{8}     *Lange* thus affirmed that, under the Fourth Amendment, a law enforcement officer pursuing a fleeing misdemeanant may rely on "exigent circumstances" to enter a home without a warrant only "[w]hen the totality of circumstances shows an emergency—such as imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home[.]" *Id.* at 2021. Conversely, "[w]hen the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officers must respect the sanctity of the home—which means that they must get a warrant." *Id.* at 2022.

{9}     Turning back to the case at hand, it does not appear that the district court considered whether exigent circumstances, of the type described in *Lange* (i.e., circumstances giving rise to a law enforcement emergency), were present in this case. Given this, and given that we do not have the benefit of the parties' input on how *Lange*

impacts this case, we have determined it is in the interests of justice and judicial economy to remand this matter for the district court to redetermine its suppression ruling in light of *Lange*.[1] *See State v. Franklin*, 2020-NMCA-016, ¶¶ 1-2, 32, 460 P.3d 69 (reversing a suppression ruling and remanding for redetermination in light of then-recent United States Supreme Court precedent not properly considered by the district court); *State v. Baldonado*, 1992-NMCA-140, ¶ 11, 115 N.M. 106, 847 P.2d 751 (remanding for the trial court to redetermine its suppression ruling in light of law clarified by this Court, where the rationale of the trial court was not known).

**CONCLUSION**

**{10}**　For the foregoing reasons, we reverse the district court's order denying Defendant's motion to suppress and remand this matter to the district court for redetermination of its suppression ruling in light of *Lange* and for any necessary, further proceedings.

**{11}**　Lastly, we express our concern with the quality of appellate briefing on behalf of Defendant by private counsel contracted with the Law Offices of the Public Defender. As a result, if either party subsequently appeals this matter and should Defendant again qualify for appointed counsel, we direct the Law Offices of the Public Defender to represent Defendant on appeal and not to seek withdrawal and substitution by contract counsel. *Cf. Lukens v. Franco*, 2019-NMSC-002, ¶¶ 2-7, 433 P.3d 288.

**{12}　IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**

---

1To the extent there is a dispute on remand as to whether Defendant's arrest occurred in his house or on his porch, we encourage the parties and the district court to consider *Florida v. Jardines*, 569 U.S. 1, 3-5, 7, 10, 12 (2013) (observing that a "front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends" and affirming the suppression of evidence from a warrantless search on a porch because officers did not have "an implied license to enter the porch" (internal quotation marks and citation omitted)).